# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICK MANNA, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | Case No. 1:21-cv-11017 |
| v. | CLASS ACTION COMPLAINT |
| KONINKELIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | DEMAND FOR JURY TRIAL |
| *Defendants.* | |

Plaintiff Nick Manna ("Plaintiff" or "Plaintiff Manna"), on behalf of himself and the class and subclasses of all others similar situated as defined below, for his complaint against defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a proposed class of purchasers of Philips Bi-Level Positive Airway Pressure (Bi-Level PAP), Continuous Positive Airway Pressure (CPAP), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.     On April 26, 2021, Philips disclosed that it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances. On June 14, 2021, Philips issued a recall of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into

particles which may enter the device's pathway and be ingested or inhaled by users of devices which contain PE-PUR Foam, as well as off-gassing certain chemicals. Philips recommended that patients using Philips BiLevel PAP and CPAP devices immediately discontinue their use of their devices.

3.　　　Plaintiff Manna purchased a Philips DreamStation CPAP device prior to June 14, 2021. On or about June 14, 2021, Plaintiff Manna was informed by his physician that Plaintiff Manna's Philips DreamStation CPAP device was subject to a recall due to the presence of a dangerous PE-PUR Foam that could cause him to suffer from adverse health effects, including, *inter alia*, cancer. Plaintiff Manna was advised to discontinue use of the device. Plaintiff Manna must now incur substantial expenses to replace the device.

4.　　　Plaintiff Manna seeks to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam on behalf of himself and the proposed Class and Subclasses.

## **PARTIES**

5.　　　Plaintiff Nick Manna is a citizen of the State of Connecticut.

6.　　　Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of Philips NA and Philips RS.

7.　　　Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V. Upon

2

information and belief, Philips NA manages the operation of Royal Philips' various lines of

business, including Philips RS, in North America.

8.      Defendant Philips RS North America LLC ("Philips RS") is a Delaware

corporation with its principal place of business located at 6501 Living Place, Pittsburgh,

Pennsylvania 15296. Philips RS was formerly operated under the business name Respironics,

Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of

the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiff and

most members of the proposed Classes are citizens of a state different from Defendants.

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c)

and 18 U.S.C. § 1965, because Defendants transact business, are found in, and/or have agents

in this District, and because some of the actions giving rise to this complaint took place within

this District.

11.     The Court has personal jurisdiction over the Defendants. Defendants have

transacted business, maintained substantial contacts, and/or committed overt acts in furtherance

of the illegal scheme and conspiracy throughout the United States, including in this District. The

scheme and conspiracy have been directed at, and have had the intended effect of, causing injury

to persons residing in, located in, or doing business throughout the United States, including in

this District.

---

[1] *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE,
https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

## FACTUAL BACKGROUND

**I.      Continuous Positive Airway Pressure Therapy**

12.      Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

13.      Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

**II.      Bi-Level Positive Airway Pressure Therapy**

14.      Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into a person's airway,

rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

## SUBSTANTIVE ALLEGATIONS

15.     Philips developed, marketed, and sold a lineup CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

### III.     Philips Sleep & Respiratory Care Devices Were Endangering its Users

16.     On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

---

[2] *First Quarter Results*, PHILIPS (Apr. 26 2021),
https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf
(accessed June 16, 2021).

17.     Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philip announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

18.     The list of the devices recalled by Phillips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
| --- | --- |
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |

---

[3] *Philips issues recall notification* * *to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

[4] *Id.*

[5] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

[6] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
| --- | --- |
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

19.     According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following: "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8] Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

IV.   **The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless**

20.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

21.     The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions. Individuals not using life-supporting ventilators must discontinue their user of the Recalled Devices or face health risks as grave as cancer. If they choose to discontinue use they must either pay for another expensive device in order to receive effective treatment. Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

22.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**: Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

23.     As a result of the above, Plaintiff and the Class will have to undertake considerable expense replacing the Recalled Devices.

---

[10] *Id.* (emphasis in original).

[11] *Id.* (emphasis in original).

### V.    Philips Unreasonably Delayed its Recall

24.    Defendants have not disclosed when they first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[12] However, given how long ago the first of the Recalled Devices came to market, it is unlikely that Defendants only recently learned of these issues.

25.    Thus, as a result of user reports, Defendants were aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time. During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of development adverse health effects, including cancer.

### VI.    Plaintiff Nick Manna

26.    Plaintiff Nick Manna is a resident of Stamford, Connecticut.

27.    Plaintiff Manna purchased one of the Recalled Devices, a Philips DreamStation CPAP device, prior to June 14, 2021.

28.    Plaintiff used his Recalled Device regularly to treat a health condition until learning that the device was one of the Recalled Devices on or about June 14, 2021.

29.    As a result of the health risks associated with continued use of his device and the recall, Plaintiff Manna's DreamStation CPAP device is now worthless and Plaintiff Manna will be forced to replace the device at considerable cost.

---

[12] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

## TOLLING AND ESTOPPEL

### I.     DISCOVERY RULE TOLLING

30.     Plaintiff and the Class and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

31.     Neither Plaintiff nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further, Plaintiff and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

32.     For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiff, the Class, and the Subclasses.

### II.     FRAUDULENT CONCEALMENT TOLLING

33.     By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiff and the members of the Class and Subclasses.

34.     Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiff and members of the Classes and Subclasses. Plaintiff and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and 23(b)(3).

36.     Plaintiff seeks class certification on behalf of a class defined as follows (the

"Class"):

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of
any applicable limitations period through June 14, 2021, purchased one of the Philips
Recalled Devices for household or business use, and not for resale (the "Class").

37.     Plaintiff seeks certification on behalf of a subclass defined as follows:

**CONNECTICUT SUBCLASS:** all persons who were or are citizens of the State of
Connecticut who, from the beginning of any applicable limitations period through June
14, 2021, purchased one of the Philips Recalled Devices for household or business use,
and not for resale (the "Connecticut Subclass").

38.     Plaintiff seeks certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:** all persons who were or are citizens of the
Commonwealth of Massachusetts who, from the beginning of any applicable limitations
period through June 14, 2021, purchased one of the Philips Recalled Devices for
household or business use, and not for resale (the "Massachusetts Subclass").

39.     Plaintiff seeks certification on behalf of a subclass defined as follows:

**PENNSYLVANIA SUBCLASS:** all persons who were or are citizens of the
Commonwealth of Pennsylvania who, from the beginning of any applicable limitations
period through June 14, 2021, purchased one of the Philips Recalled Devices for
household or business use, and not for resale (the "Pennsylvania Subclass").

40.     Plaintiff reserves the right to modify or refine the definitions of the Class or

Subclasses based upon discovery of new information and in order to accommodate any of the

Court's manageability concerns.

41.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge

presiding over this action and members of their staff, as well as members of their families; (b)

Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and

any entity in which any Defendants or their parents have a controlling interest, as well as

Defendants' current or former employees, agents, officers, and directors; (c) persons who

properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e)

counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of

any such excluded persons.

      42.    **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable

because they are defined using objective criteria so as to allow class members to determine if

they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified

through records maintained by Defendants.

      43.    **Numerosity (Rule 23(a)(1)).** The Classes and Subclasses are so numerous that

joinder of individual members herein is impracticable. The exact number of members of the

Class and Subclasses, as herein identified and described, is not known, but sales figures indicate

that millions of individuals have purchased the Philips Recalled Devices.

      44.    **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each

cause of action and predominate over questions affecting only individual Class and Subclass

members, including the following:

- whether Defendants owed a duty of care to Plaintiff and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiff and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiff and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

45.     **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiff and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendants' wrongful conduct that is uniform across the Class and Subclasses.

46.     **Adequacy (Rule 23(a)(4)).** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class and Subclasses.

47.     **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

48.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole. Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

50.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51.     Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiff and the Class and State Subclasses.

52.     Philips expressly warranted, advertised, and represented to Plaintiff and the Class and State Subclasses that the Recalled Devices were safe and appropriate for human use.

53.     Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class and State Subclasses entered into upon purchasing the Recalled Devices.

54.     Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiff and the Class and State Subclasses. Plaintiff and the Class and State Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

55.     Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

56.     Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, safety of Recalled Devices.

57.     Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiff and members of the Class and State Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

58.     Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and

appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

59.     The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiff and members of the Class and State Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiff and members of the Class and State Subclasses at the time of purchase of the Recalled Devices.

60.     As manufacturers, marketers, advertisers, distributors and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

61.     In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiff and members of the Class and State Subclasses to rely on such representations.

62.     Philips' affirmations of fact and promises were material, and Plaintiff and members of the Class and State Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

63.     All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiff or members of the Class or State Subclasses.

64.     Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them

safe and healthy for use by Plaintiff and members of the Class and State Subclasses, but failed to do so until now.

65.     As a direct and proximate result of Philips' breaches of express warranty, Plaintiff and members of the Class and State Subclasses have been damaged because they did not receive the products as specifically warranted by Philips. Plaintiff and members of the Class and State Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

66.     Plaintiff and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68.     Philips are merchants engaging in the sale of goods to Plaintiff and the Class and State Subclasses.

69.     There was a sale of goods from Philips to Plaintiff and the Class and State Subclasses.

70.     At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiff and the Class and State Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices

were safe and appropriate for human use. Plaintiff and the Class and State Subclasses relied on

Philips' promises and affirmations of fact when they purchased the Recalled Devices.

71.     Contrary to these representations and warranties, the Recalled Devices were not

fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use

of the Recalled Devices was accompanied by the risk of adverse health effects that do not

conform to the packaging.

72.     Philips breached its implied warranties by selling Recalled Devices that failed to

conform to the promises or affirmations of fact made on the packaging or label as use of each

Recalled Devices was accompanied by the risk of developing adverse health effects that do not

conform to the packaging.

73.     Philips was on notice of this breach, as it was made aware of the adverse health

effects accompanying use of the Recalled Devices through user reports submitted to Philips.

74.     Privity exists because Philips impliedly warranted to Plaintiff and the Class

through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices

were natural, and suitable for use to treat health conditions by individuals, and made no mention

of the attendant health risks associated with use of the Recalled Devices.

75.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and

State Subclasses have suffered actual damages in that each Recalled Device they purchased is

worth less than the price they paid and that they would not have purchased at all had they known

of the attendant health risks associated with the use of each Recalled Device.

76.     Plaintiff and the Class and State Subclasses seek actual damages, injunctive and

declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder

for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78. Philips falsely represented to Plaintiff and the Class and State Subclasses that the Recalled Devices were safe for human use.

79. Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class and State Subclasses to purchase Recalled Devices.

80. Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of cause adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements. Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class and State Subclasses.

81. Plaintiff and the Class and State Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiff's and the Class' and State Subclasses' reliance on Philips' misrepresentations was justifiable.

82. As a direct and proximate result of Philips' conduct, Plaintiff and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

83.     Plaintiff and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

## FRAUD BY OMISSION

### (on behalf of Nationwide Class or, alternatively, the State Subclasses)

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     Philips concealed from and failed to disclose to Plaintiff and the Class and State Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

86.     Philips was under a duty to disclose to Plaintiff and the Class and State Subclasses the true quality, characteristics, ingredients and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiff and the Class and State Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

87.     The facts concealed or not disclosed by Philips to Plaintiff and the Class and State Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

88.     Plaintiff and the Class and State Subclasses justifiably relied on the Philips' omissions to their detriment. The detriment is evident from the true quality, characteristics, and

risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

89.    As a direct and proximate result of Philips' conduct, Plaintiff and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

90.    Plaintiff and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

91.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92.    Philips had a duty to Plaintiff and the Class and State Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

93.    Philips breached its duty to Plaintiff and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

94.     Philips knew or should have known that the qualities and characteristics of the

Recalled Devices were not as advertised or suitable for their intended use and were otherwise not

as warranted and represented by Philips. Specifically, Philips knew or should have known that:

(1) the use of Recalled Devices was accompanied by risk of adverse health effects do not

conform to the packaging and labeling; (3) the Recalled Devices were adulterated, or at risk of

being adulterated, by the PE-PUR Foam; and (4) the Recalled Devices were otherwise not as

warranted and represented by Philips.

95.     As a direct and proximate result of Philips' conduct, Plaintiff and the Class and

State Subclasses have suffered actual damages in that they purchased Recalled Devices that were

worth less than the price they paid and that they would not have purchased at all had they known

they contained, PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse

health effects that do not conform to the products' labels, packaging, advertising, and statements.

96.     Plaintiff and the Class and State Subclasses seek actual damages, injunctive and

declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

97.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98.     Plaintiff and the Class and State Subclasses conferred substantial benefits on

Philips through their purchase of Recalled Devices. Philips knowingly and willingly accepted

and enjoyed these benefits.

99.     Philips either knew or should have known that the payments rendered by Plaintiff

and the Class and State Subclasses were given with the expectation that the Recalled Devices

would have the qualities, characteristics, and suitability for use represented and warranted by

Philips. As such, it would be inequitable for Philips to retain the benefit of the payments under

these circumstances.

100.    Philips' acceptance and retention of these benefits under the circumstances

alleged herein make it inequitable for Philips to retain the benefits without payment of the value

to Plaintiff and the Class and State Subclasses.

101.    Plaintiff and the Class and State Subclasses are entitled to recover from Philips all

amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

102.    Plaintiff and the Class and State Subclasses seek actual damages, injunctive and

declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the

laws.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**Conn. Gen. Stat. §§ 42-110a *et seq.***

**(on behalf of Plaintiff Manna and the Connecticut Subclass)**

103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

104.    Plaintiff and Connecticut Subclass Members are residents of the State of

Connecticut.

105.    Each Defendant is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

106.    Plaintiff and Connecticut Subclass Members are actual or potential consumers of

Recalled Devices.

107.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in

Connecticut as defined by Conn. Gen. Stat. § 42-110(a)(4), in that they engaged in the

"advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

108.    The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a).

109.    For the reasons discussed herein, Philips violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

110.    Philips repeatedly advertised on the labels for Recalled Devices, on its websites, and through national advertising campaigns, that Recalled Devices were and are safe for use by individuals. Philips failed to disclose the material information that Recalled Devices contained an unsafe material, PE-PUR Foam, which could cause a Recalled Device to suffer adverse health effects from use of the Recalled Devices.

111.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Connecticut Subclass Members in the form of the loss or diminishment of value of Recalled Devices Plaintiff and Connecticut Subclass Members purchased, which allowed Philips to profit at the expense of Plaintiff and Connecticut Subclass Members. The injuries to Plaintiff and Connecticut Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

112.     Plaintiff and Connecticut Subclass Members seek relief for the injuries they have

suffered as a result of Philips' unfair and deceptive acts and practices, as provided by C.G.S. §

42-110g and applicable law.

## EIGHTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws ch. 93, §§ 1 *et seq.*

### (on behalf of the Nationwide Class, or alternatively, the Massachusetts Subclass)

113.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

114.     Plaintiff intends to assert and prosecute claims under the under the Massachusetts

Consumer Protection Law, M.G.L.A. ch. 93A § 1 et seq. ("MCPL") against Defendants.

Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts. This

Count provides notice that this Complaint shall be amended to demand all appropriate relief once

Plaintiff has provided notice in accordance with M.G.L. ch. 93A § 9(3) to Defendant Philips NA

and the statutory period for a response has passed, subject to any response by Defendant Philips

NA.

115.     Each Defendant is a "person" as defined by M.G.L.A. 93A § 1(a).

116.     Plaintiff and members of the Massachusetts Subclass are actual or potential

consumers of Recalled Devices.

117.     Philips engaged in engaged in deceptive or unfair acts or practices in the in the

conduct of any trade or commerce, in violation of M.G.L. 93A § 2(a), including but not limited

to the following:

(a)     Knowingly or recklessly made a false representation as to the characteristics and
use of Recalled Devices, in violation of 93A § 2(a);

(b)     Represented that Recalled Devices are safe for use, in violation of 93A § 2(a);

(c)    Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A § 2(a); and

(d)    Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Device users were at risk of suffering adverse health effects, in violation of 93A § 2(a).

118.   As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiff and Massachusetts Subclass Members.

119.   Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff and members of the Class and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

120.   Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Massachusetts Subclass Members in the form of the loss or diminishment of value of Recalled Devices Plaintiff and Massachusetts Subclass Members purchased, which allowed Philips to profit at the expense of Plaintiff and Massachusetts Subclass Members. The injuries to Plaintiff and Massachusetts Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

121.   Plaintiff and Massachusetts Class Members seek relief under 93A § 9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## NINTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*

### (on behalf of the Nationwide Class, or alternatively, the Pennsylvania Subclass)

122.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

123.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

124.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

125.    For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 et seq. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

126.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use. Philips failed to disclose the material

information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

127.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff and Pennsylvania Subclass Members suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

128.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff and members of the Class and Massachusetts Subclass in the form of the loss or diminishment of value of the Recalled Devices Plaintiff, Class Members, and Pennsylvania Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiff, Class Members, and Pennsylvania Subclass Members. The injuries Plaintiff and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

129.    Plaintiff, Class Members, and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Philips as to each and every count, including:

A. An order certifying this action and the Class and State Subclasses requested herein as a class action, designating Plaintiff as the representatives of the Class and State Subclass, and appointing Plaintiff's counsel as counsel to the Class and State Subclasses;

B. An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Connecticut, Massachusetts, and Pennsylvania consumer protection statutes, and that Philips is liable to Plaintiff and the Class and State Subclasses, as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Philips from continuing the unlawful practices alleged herein, and injunctive relief to remedy Philips' past conduct;

D. A judgment awarding Plaintiff and members of the Class and State Subclasses all appropriate damages, in an amount to be determined at trial;

E. A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F. A judgment awarding Plaintiff and the Class and Subclasses prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiff and the Class and Subclasses costs and fees, including

attorneys' fees, as permitted by law; and

H.  Grant such other legal, equitable or further relief as the Court may deem just and

proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


DATED:          June 17, 2021                    Respectfully submitted,

                                                 */s/ Sean K. McElligott*
                                                 Sean K. McElligott (Mass. BBO #651710)
                                                 Richard A. Silver (*pro hac vice* forthcoming)
                                                 Steven L. Bloch (*pro hac vice* forthcoming)
                                                 Ian W. Sloss (*pro hac vice* forthcoming)
                                                 Zachary A. Rynar (*pro hac vice* forthcoming)
                                                 **SILVER GOLUB & TEITELL LLP**
                                                 184 Atlantic Street
                                                 Stamford, Connecticut 06901
                                                 Telephone: (203) 325-4491
                                                 Facsimile: (203) 325-3769
                                                 smcelligott@sgtlaw.com
                                                 rsilver@sgtlaw.com
                                                 sbloch@sgtlaw.com
                                                 isloss@sgtlaw.com
                                                 zrynary@sgtlaw.com